UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHRISTOPHER RASKU, | Case No. 20-cv-01286-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT** |
| CITY OF UKIAH and KEVIN MURRAY, | Re: ECF No. 9 |
| Defendants. | |

## INTRODUCTION

After plaintiff Christopher Rasku's neighbor called the police about an argument with another neighbor, Officer Kevin Murray responded, allegedly entered the plaintiff's home unlawfully, knocked the plaintiff unconscious, and punched, kneed, and kicked him, causing several broken ribs, a punctured and partially collapsed lung, nerve damage, and other injuries.[1] Officers then arrested the plaintiff.[2] Officer Murray allegedly wrote a police report with false statements about the encounter, including statements that the plaintiff started the encounter with him.[3] Ultimately

---

[1] Compl. – ECF No. 1 at 3–4 (¶¶ 10–17). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 4 (¶ 16).

[3] *Id.* (¶¶ 18–19).

ORDER – No. 20-cv-01286-LB

the plaintiff was offered diversion.[4] In this civil-rights lawsuit under 42 U.S.C. § 1983, the plaintiff sued (1) Officer Murray for unlawful entry and excessive force, in violation of the Fourth Amendment to the U.S. Constitution (claims one and two) and (2) the City of Ukiah for municipal liability on the ground that the City's police chief ratified Officer Murray's unlawful entry and excessive force, in violation of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[5]

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or for a more definite statement under Rule 12(e) on the grounds that (1) the plaintiff did not plead the claims against Officer Murphy plausibly under Rule 12(b)(6) and in any event must add more allegations under Rule 12(e) about the criminal case to allow a determination about whether the claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and (2) the plaintiff does not plead any facts about ratification to support a *Monell* claim.[6] The court denies the motion to dismiss the claims against Officer Murphy because the claims are sufficiently pleaded and are not barred by *Heck*. The court grants the motion to dismiss the *Monell* claim with leave to amend.

### STATEMENT

The plaintiff, a veteran who was honorably discharged from the United States Navy, is disabled due to a back injury that he suffered during his military service.[7] He is a single father, lives with his son in an apartment complex in Ukiah, and was 46 at the time that he encountered Officer Murray.[8]

On October 13, 2018, at about 7:00 p.m., the plaintiff left a note on his neighbor Joni Wellington's door about her dog, who had been barking all day in Ms. Wellington's absence.[9] Around 10:30 p.m., Ms. Wellington returned home drunk, found the note, and confronted another

---

[4] *Id.* (¶ 19).
[5] *Id.* at 5–6 (¶¶ 25–36).
[6] Mot. – ECF No. 9 at 7–11.
[7] Compl. – ECF No. 1 at 3 (¶ 10).
[8] *Id.* (¶¶ 10–11).
[9] *Id.* (¶ 11).

ORDER – No. 20-cv-01286-LB                    2

neighbor about it.[10] The plaintiff heard the commotion, came out of his apartment, and explained that he had left the note.[11] Another neighbor announced that she had called the police, who were on their way.[12] The plaintiff returned to his apartment and was standing inside the doorway behind a partly closed door when Officer Murray arrived.[13]

The plaintiff recognized Officer Murray from an earlier encounter when Officer Murray accused him of egging someone's car, entered the plaintiff's apartment, searched his refrigerator, and claimed that his eggs "matched" the eggs found at the scene.[14] That time, the plaintiff called Officer Murray a "punk" and told him to leave his apartment immediately, and Officer Murray "has had it out for Mr. Rasku" ever since.[15]

When Officer Murray arrived on October 13, he told the plaintiff to take a seat on the ground outside his apartment.[16] The plaintiff refused and said he would stay in his doorway.[17] In response, without any exigency, Officer Murray charged at the plaintiff's door with his shoulder causing the door to fly open into the plaintiff's head and face, knocking him unconscious.[18] Officer Murray entered the home and began punching, kneeing, and kicking the plaintiff.[19] The plaintiff woke up with his left arm cuffed, his right arm under his body (rendering him immobile), while Officer Murray kneed him in the ribs.[20] Officer Murray repeatedly punched the plaintiff in the face and

---

[10] *Id.*
[11] *Id.*
[12] *Id.* (¶ 12).
[13] *Id.*
[14] *Id.* (¶ 13).
[15] *Id.*
[16] *Id.* (¶ 14).
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

delivered "numerous further knee strikes to his lower ribs".[21] Officer Murray was wearing a body camera during the encounter, but in violation of department policy, did not activate it.[22]

Backup officers arrived minutes later, finished cuffing the plaintiff, and "picked him up from the ground by the chain of the handcuffs, raising [the plaintiff]'s arms high above his back and causing him great pain."[23] The overtight handcuffs cut into the flesh on the plaintiff's wrists.[24] The officers carried the plaintiff to their patrol car, and Officer Murray shut the door on the plaintiff's foot, laughed at him, and said that he was going to jail and would lose his housing.[25]

The plaintiff spent that night at Ukiah Valley Hospital and then was transferred to Santa Rosa Memorial hospital, where he spent the next four days.[26] He suffered the following injuries:

> [E]ight of Mr. Rasku's ribs were broken, four of them in multiple places. One of Mr. Rasku's lungs was punctured and would later partially collapse. Plaintiff further suffered nerve damage to his wrists, a chest wall contusion, abrasions around his neck, and facial injuries which caused his eye to swell shut. As a result of the injury to his lungs, Mr. Rasku developed pneumonia.[27]

Officer Murray wrote a police report that falsely accused the plaintiff of slamming the apartment door on Officer Murray's arm and trying to punch him.[28] A young boy in an adjacent apartment recorded the entry, and the video "clearly depicts the initial confrontation, and directly contradicts Officer Murray's" account.[29] Prosecuting authorities charged the plaintiff with one felony count of resisting arrest in Mendocino County Superior Court.[30] During the preliminary

---

[21] *Id.* at 4 (¶ 14).
[22] *Id.* (¶ 15).
[23] *Id.* (¶ 16).
[24] *Id.*
[25] *Id.*
[26] *Id.* (¶ 17).
[27] *Id.*
[28] *Id.* (¶ 18).
[29] *Id.*
[30] *Id.* (¶ 19).

hearing, after Officer Murray allegedly perjured himself, the prosecutor offered the plaintiff diversion.[31]

On February 20, 2020, the plaintiff sued (1) Officer Murray for unlawful entry and excessive force, in violation of the Fourth Amendment (claims one and two) and (2) the City of Ukiah for municipal liability on the ground that the City's police chief ratified Officer Murray's unlawful entry and excessive force, in violation of *Monell*.[32] The defendants moved to dismiss.[33] All parties consented to the undersigned's jurisdiction.[34] The court held a hearing on May 14, 2020.[35]

## STANDARD OF REVIEW

**1. Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a

---

[31] *Id.*

[32] *Id.* at 5–6 (¶¶ 25–36).

[33] Mot. – ECF No. 9.

[34] Consent Forms – ECF Nos. 6 & 7.

[35] Minute Order – ECF No. 18.

ORDER – No. 20-cv-01286-LB     5

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (citations and internal quotation marks omitted).

**2. Rule 12(e)**

A party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The motion "must be considered in light of the liberal pleading standards set forth in Rule 8(a)(2)." *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma,* 644 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009). Rule 8 (summarized in the previous section) requires "sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block,* 932 F.2d 795, 798 (9th Cir. 1991). Thus, "the proper test in evaluating a Rule 12(e) motion is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." *Fed. Sav. & Loan Ins. Corp. v. Musacchio,* 695 F. Supp. 1053, 1060 (N.D. Cal. 1988). "The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted." *Griffin v. Cedar Fair, L.P.,* 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011). Courts are instructed not to resolve "merits issues, especially fact-sensitive questions, on Rule 12(e) motions." *One Indus., LLC v. Jim O'Neal Distrib., Inc.,* 578 F.3d 1154, 1160 (9th Cir. 2009).

Judges "may in [their] discretion, in response to a motion for a more definite statement under Federal Rules of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if [the] order is violated." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

**ANALYSIS**

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or for a more definite statement under Rule 12(e) on the grounds that (1) the plaintiff did not plead the claims against Officer Murphy plausibly under Rule 12(b)(6) and in any event must add more allegations under Rule 12(e) about the criminal case to allow a determination about whether the claims are barred by *Heck v. Humphrey*, and (2) the plaintiff does not plead any facts about ratification to support a *Monell* claim.[36] The court denies the motion to dismiss the claims against Officer Murphy because the claims are sufficiently pleaded and are not barred by *Heck.* The court grants the motion to dismiss the *Monell* claim with leave to amend.

**1. Claims Against Officer Murphy**

In the motion to dismiss, the defendants contend that (1) the complaint does not specify the outcome of the criminal proceeding, and that if the plaintiff were convicted of resisting arrest, his claims for unlawful entry and excessive force may be barred by *Heck v. Humphrey*, and (2) the complaint does not specify facts establishing the claims and therefore must be dismissed under Rule 12(b)(6).[37]

As to the Rule 12(b)(6) argument, the plaintiff plausibly pleads claims (and the defendants do not seriously argue otherwise).[38] For the unlawful-entry claim, "[a] warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment warrant requirement applies, such as emergency, exigency, or consent." *Espinosa v. City and Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir. 2010) (citing *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1016 (9th Cir. 2008)). For the excessive-force claim, a plaintiff must plausibly plead that the officer used force that was unreasonable in light of the totality of the circumstances, including "(1) how severe the crime at issue is, (2) whether the [plaintiff] posed an immediate threat to the safety

---

[36] Mot. – ECF No. 9 at 7–11.

[37] *Id.* at 8–9.

[38] *Id.* at 9; Reply – ECF No. 12 at 6–7.

ORDER – No. 20-cv-01286-LB            7

of the officers or others, and (3) whether the [plaintiff] was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (citing *Doerle v. Rutherford*, 272 F.3d 1272, 1279–80 (9th Cir. 2001)). Here, the plaintiff alleged that Officer Murray entered his home without a warrant and without an exigency and used force that resulted in serious injury to him.[39] These allegations plausibly plead the claims. *See Sheehan v. Bay Area Rapid Transit*, No. 14-cv-03156-LB, 2016 WL 777784, at *6 (N.D. Cal. Feb. 29, 2016).

The defendants' main argument is that under *Heck*, the state criminal case may preclude both claims, and the plaintiff must at least provide more detail about the status of the state case to allow that evaluation at the pleadings stage.[40]

In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-487. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.* at 487. When a plaintiff seeks damages in a § 1983 suit, the district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *Id.* If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, then the action should be allowed to proceed (assuming that there is not some other bar to the suit such as abstaining in response to parallel state-court proceedings.) *Id.* at 487 & n.8 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

---

[39] Compl. – ECF No. 1 at 3–4 (¶¶ 14–17).

[40] Mot. – ECF No. 9 at 7–8.

ORDER – No. 20-cv-01286-LB                 8

1    The plaintiff here does not challenge the wrongfulness of his conviction and instead challenges
2    the wrongfulness of the entry and the officer's use of force.

3    Preliminarily, as to both claims, the status of the case is a matter of public record that the court
4    can judicially notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The court does
5    not understand why the parties did not provide that point of reference. Also, if the plaintiff
6    accepted and completed diversion, there is no conviction. Moreover, the *Heck* rule delays accrual
7    only if there is an existing conviction. *Wallace v. Kato*, 549 U.S. 384, 389–90, 393–94 (2007). (If
8    a plaintiff files a claim — usually a § 1983 claim of false arrest or another claim related to rulings
9    that likely will be made in a pending or anticipated criminal trial before he is convicted — then
10   courts can stay the civil action until the criminal case or the likelihood of the criminal case is
11   ended. *Id.* at 393–94.) (Plaintiff's counsel said at the hearing that the plaintiff will finish a 24-
12   month diversion program by April 2021.)

13   As to the merits of the defendants' argument, the parties' briefing on the *Heck* issue is slight:
14   the defendants contend only that the plaintiff needed to provide more information about the status
15   of the state criminal case, and the plaintiff counters only that there is no evidence that the plaintiff
16   suffered a criminal conviction.[41] Given the Rule 12(e) standard, the court denies the motion for a
17   more definite statement because the pleading — given the availability of a public-record answer
18   — is not so "so vague or ambiguous that the party cannot reasonably prepare a response,"
19   especially given Rule 8(a)'s liberal pleading standard. Fed. R. Civ. P. 12(e); Fed. R. Civ. P.
20   8(a)(2). Also, the claims are not precluded by *Heck*: (1) the alleged illegal entry does not bar any
21   conviction for resisting arrest; and (2) the plaintiff alleged that Officer Murray used excessive
22   force after he was handcuffed and unconscious.

23   First, an unlawful entry to make an otherwise lawful felony arrest may violate the Fourth
24   Amendment, but it does not invalidate the arrest. More specifically, absent exigent circumstances,
25   the police must obtain an arrest warrant for a defendant before they may forcibly enter the
26   suspect's home to arrest him. *Payton v. New York*, 445 U.S. 573 (1980); *see also, e.g.*, *Kirk v.*

---

[41]*Id.*; Opp'n – ECF No. 11 at 2–3.

*Louisiana*, 536 U.S. 635 (2002) (per curiam). But the lack of a warrant and the lack of exigency result in suppression of any evidence seized, not an invalidation of any otherwise lawful felony arrest predicated on probable cause. *See Kirk*, 536 U.S. at 635 (challenge was to the suppression of the evidence, not the invalidation of the conviction); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019) (discussing common-law principles regarding officers' privilege to arrest for felonies). And if the validity of the conviction does not depend on the challenged conduct, then a favorable judgment in the § 1983 case does not invalidate the conviction. *See Ove v. Gwinn*, 264 F.3d 817, 823 (9th Cir. 2001) (not every action based on an illegal search and seizure is barred by *Heck*; a claim for damages for unreasonable blood tests was not barred by *Heck* because the blood evidence was not introduced against the plaintiffs when they pleaded guilty or not guilty to driving under the influence; "Even if the plaintiffs prove everything they allege about the blood draws, a judgment in their favor will not imply the invalidity of their DUI convictions because the convictions do not depend upon the blood draws.").

Second, a claim of excessive force during the course of an arrest may not necessarily imply the invalidity of the arrest or conviction and therefore may not be barred by *Heck*. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *Smithart v. Towery*, 79 F.3d 951, 952–53 (9th Cir. 1996).

In California, a conviction for resisting arrest pursuant to California Penal Code § 148 may be lawfully obtained only if the officers do not use excessive force in the course of making that arrest. *Smith v. City of Hemet*, 394 F.3d 689, 696 (9th Cir. 2005) (en banc). In *Smith*, the court held that if police officers used excessive force after the acts of resistance ceased, *Heck* did not bar a § 1983 action for that use of excessive force. *Id.* In *Hooper v. Cnty. of San Diego*, the court similarly held that a "conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" 629 F.3d 1127, 1134 (9th Cir. 2011);[42] *compare*

---

[42] *Hooper* rejected the part of *Smith* that suggested that the court needed to be able to divide the incident into portions to determine whether *Heck* applied to a given situation. In *Smith*, the Ninth Circuit had suggested that, if a plaintiff had a § 148 conviction based on acts of resistance during the

*Sanford v. Motts*, 258 F.3d 1117, 1120 (9th Cir. 2001) (when a civil-rights complaint, brought by a person convicted of resisting arrest, alleges that the officer used excessive force after the arrest, the complaint is not barred by *Heck*) *with Cunningham v. Gates*, 312 F.3d 1148, 1153–55 (9th Cir. 2003) (where the plaintiff was convicted of felony murder for provoking police gunfire that killed his associate, plaintiff's claim that the police either started firing first or deliberately created a dangerous situation that provoked the plaintiff into firing necessarily implied the invalidity of the conviction) *and Beets v. County of Los Angeles*, 669 F.3d 1038, 1044–48 (9th Cir. 2012) (barring wrongful-death plaintiffs' excessive-force claim in part because no separation existed between decedent's criminal actions of assault with a deadly weapon and the alleged use of excessive force). Similarly, if a police officer used deadly force that was an unjustified and excessive response to the plaintiff's resistance, *Heck* does not bar a § 1983 action for that use of deadly force. *Yount v. City of Sacramento*, 43 Cal. 4th 885, 899 (2008). (A § 148(a) conviction does encompass a finding that the person convicted did engage in some kind of resistance, and thus a plaintiff is foreclosed in a § 1983 action from denying that he resisted. *Id.* at 898.)

In sum, *Heck* does not bar the claims because the alleged illegal entry does not affect any criminal prosecution for resisting arrest, and Officer Murray allegedly used excessive force after the plaintiff was handcuffed and unconscious.

### 2. The *Monell* Claim

Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *Monell*, 436 U.S. at 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Local governments can be sued directly under § 1983 only if they

---

course of arrest — both part of the same continuous occurrence — *Heck* would bar a claim that the police officers used excessive force during the arrest. *Hooper* rejected this as dicta, explaining that it was based on an understanding of California law that later was contradicted by *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008). In *Yount*, the California Supreme Court interpreted California Penal Code § 148(a)(1) to require only that some lawful police conduct be resisted, delayed or obstructed. *See Hooper*, 629 F.3d at 1132. "It does not matter that the officer might also, at some other time during that same 'continuous transaction,' have acted unlawfully." *Id.*

ORDER – No. 20-cv-01286-LB    11

maintain a policy or custom that results in a violation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 690–91.

To impose *Monell* entity liability for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). There are three ways to show a municipality's policy or custom:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g.*, *Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss).

The plaintiff claims a *Monell* violation based on the police chief's ratification of Officer Murray's actions.[43]

To plead a *Monell* claim through ratification, "a plaintiff must show that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.'" *Dasovich v. Contra Costa Cnty. Sheriff's Dep't*, No. 14-cv-00258-MEJ, 2014 WL 4652118, at *6 (N.D. Cal. Sept. 17, 2014) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* (citing *Lytle*, 382 F.3d at 987). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* (citing *Lytle* 382 F.3d at 987); *accord, e.g.*, *Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police

---

[43] Compl. – ECF No. 1 at 6 (¶¶ 35–36); Opp'n – ECF No. 11 at 3–6.

department's 'mere failure to discipline its officers does not amount to ratification of their allegedly unconstitutional actions.'") (internal brackets omitted) (quoting *Sheehan v. City and Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*, 135 S. Ct. 1765 (2015)).

The plaintiff does not plead any facts about his *Monell* claim and alleges only the following:

> The acts or omissions alleged herein regarding the unlawful entry and use of excessive force were ratified by Chris Dewey, Chief of the Ukiah Police Department. Chief Dewey had final policymaking authority for the City of Ukiah concerning the acts of the Officer Murray. Plaintiff alleges on information and belief that Chief Dewey knew of and specifically approved of Defendant Murray's unlawful entry and use of force, and the reasons for those unlawful acts.[44]

These are not facts and instead are conclusions. *Dasovich*, 2014 WL 4652118, at *6 (granting motion to dismiss *Monell* claim where plaintiff failed to allege affirmative action by a policymaker). The court grants the motion to dismiss the claim with leave to amend.

## CONCLUSION

The court denies the motion to dismiss counts one and two and grants the motion to dismiss count three with leave to amend. Any amended complaint must be filed by May 28, 2020 and must include as an attachment a blackline of the amended complaint against the original complaint.

This disposes of ECF No. 9.

**IT IS SO ORDERED.**

Dated: May 14, 2020

LAUREL BEELER
United States Magistrate Judge

---

[44] Compl. – ECF No. 1 at 6 (¶ 36).